J-S40017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FRANCIS SCHMINCKE | |
| Appellant | No. 1950 EDA 2015 |

Appeal from the Judgment of Sentence May 26, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009698-2013

BEFORE:  BOWES, J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                    **FILED JUNE 06, 2016**

Appellant, Francis Schmincke, appeals from the May 26, 2015 aggregate judgment of sentence of 7 to 17 years' incarceration, imposed by the trial court after a jury convicted Appellant of involuntary sexual intercourse (IDSI), unlawful contact with a minor, aggravated indecent assault, and indecent assault.[1]  After careful review, we affirm.

The trial court recited the facts of record as follows.

> In 2000, [S.R.] and her two children, L.R., who was three years old at the time, and [G], moved in with her mother … in Philadelphia.  During the six years [S.R.] lived with her mother, [S.R.'s] nephew, [Appellant] (L.R.'s cousin), would babysit her

_____

[1]  18 Pa.C.S.A. §§ 3123(a)(6), 6318(a)(1), 3125(7), and 3126(a)(7), respectively.

children. When L.R. was in first grade, while [Appellant] was babysitting, he took L.R. upstairs to her grandmother's room. [Appellant] took his pants off and made L.R. suck his penis and put her hands on his penis. [Appellant] then took L.R.'s pants off and licked her vagina and stuck his finger in her vagina. [Appellant] then lay next to L.R. and made himself ejaculate. When L.R.'s mother came home, L.R. did not say anything about what [Appellant] had done because she did not understand that it was a bad thing.

L.R. explained that incidents like these occurred over fifty times while she lived at her grandmother's house []. Specifically, L.R. described another incident of abuse that occurred when she was about seven years old. While [Appellant] was babysitting L.R. at his house, he made L.R. perform oral sex on him and afterwards made himself ejaculate. Another incident occurred when L.R. was about eight years old. While [Appellant] was babysitting L.R. at her grandmother's house, they were on the couch when [Appellant] made L.R. perform oral sex on him. [Appellant] did not stop abusing L.R. until she and her family moved away from Philadelphia when she was nine years old.

When L.R. was about thirteen or fourteen years old, she told a friend, [A.W.], about how [Appellant] had abused her. Later that year, she told her cousin on her father's side, S.B., about the abuse. S.B. informed his mother, who eventually informed [L.R.'s mother]. [L.R.'s mother] then asked L.R. about it and L.R. told her mother about the abuse she had suffered. After L.R. disclosed the abuse to her mother, [her mother] insisted she report it and they contacted local authorities. On October 15, 2012, L.R. made a report to the Special Victims Unit of the Philadelphia Police.

Sometime after [the family] moved out of Philadelphia to Perry County, [L.R.'s maternal aunt] told [L.R.'s mother] information which led [her] to question L.R. L.R. admitted that in the past

- 2 -

[Appellant] had "done things to her." [L.R.'s mother] contacted the Perry County Police and Child and Youth Services. A few weeks after speaking to the Perry County Police, [L.R.'s mother] and L.R. traveled to Philadelphia and spoke to the Philadelphia Police. After speaking to police, L.R. became suicidal and was admitted to a hospital. While L.R. was in the hospital, she was again interviewed by detectives from the Philadelphia Police.

In 2012, [A.W.], L.R.'s friend, went out to dinner with L.R. and her mother. L.R. seemed upset and when [A.W.] inquired why she was upset, L.R. told her that when she was younger, [Appellant] had molested her. L.R. asked [A.W.] not to tell anyone, especially her mother, about what she had disclosed.

In March of 2013, Detective Erin Hinnov, who at the time was assigned to the Special Victims Unit of the Philadelphia Police Department, received a report from the Department of Human Services and began investigating. Detective Hinnov interviewed L.R., who informed her that [Appellant] used to perform oral sex on her, fondle her vagina, and have her perform oral sex on him. After the interview with L.R., Detective Hinnov interviewed [L.R.'s mother] and [Appellant's] family members. After completing these interviews, Detective Hinnov prepared an arrest warrant for [Appellant].

[J.S.], [Appellant's] mother, [S.S.], and S.B., [Appellant's] brothers, testified on [Appellant's] behalf. [J.S.] lived on Braddock Street in Philadelphia for twelve years with her four sons. According to [J.S.], during that time, neither [L.R.'s mother] nor L.R. ever visited her house. Additionally, [Appellant] never babysat for L.R. However, [J.S.] son, [S.S.], would occasionally babysit for L.R.

[S.S.] explained that when he was living on Braddock Street, he would occasionally babysit L.R.

at his grandmother's house. [S.S.] claimed that [Appellant] never accompanied him to babysit L.R.

S.B. testified that when he was eleven years old, he was talking to L.R. about [Appellant] in a sexual manner. S.B. got confused and made an allegation of sexual abuse against [Appellant]. S.B. claimed he withdrew the complaint because it was not true.

Cidney Canada testified to [Appellant's] reputation for being a peaceful and law-abiding citizen.

[Appellant] testified that he only babysat for L.R. on one single occasion. [Appellant] denied that he ever sexually abused L.R. [Appellant] explained that he was an outsider in his family and he believed L.R. was making up these allegations to put him down.

The Commonwealth presented testimony from L.R. and State Trooper Krista Miller in rebuttal. L.R. testified that in 2011, S.B. told her that [Appellant] had touched him. In April of 2013, State Trooper Krista Miller went to Joanne Schmincke's home in Cumberland County in response to a report of child sexual assault. During that visit, S.B. recounted to State Trooper Miller that he had been abused by [Appellant].

Trial Court Opinion, 8/13/15, at 2-5 (citations to notes of testimony omitted).

Appellant was charged with the above offenses, and appeared for trial on February 17-18, 2015, after which the jury rendered its guilty verdicts. On May 26, 2015, the trial court sentenced Appellant to concurrent terms of 6 to 15 years' incarceration for IDSI, 6 to 15 years' incarceration for unlawful contact with a minor, and 2 to 4 years' incarceration for aggravated

indecent assault; the trial court further sentenced Appellant to a consecutive term of 1 to 2 years' incarceration for indecent assault, for an aggregate sentence of 7 to 17 years' of incarceration.

On May 28, 2015, Appellant filed a motion for a new trial, in which he raised ineffectiveness of counsel relative to the admission of L.R.'s testimony. The trial court denied the motion on June 4, 2015. Appellant filed a notice of appeal on June 22, 2015.[2]

On appeal, Appellant presents three issues, enumerated as two, for our review.

> 1. The weight and sufficiency of the evidence were such that the trial court erred in finding Appellant guilty of the crimes charged.
>
> 2. The trial court erred in failing to merge aggravated indecent assault and indecent assault with [IDSI] and/or failing to merge aggravated indecent assault with indecent assault. []

Appellant's Brief at 10.

In his first issue, Appellant argues against the weight and sufficiency of the evidence to support his convictions. Upon review of the pleadings, we decline to reach the merits of this argument, because Appellant failed to include any weight or sufficiency claims in his Rule 1925(b) concise statement. **See** Appellant's Rule 1925(b) Statement, 8/10/15. Our finding

_____

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

is supported by the fact that the trial court did not address weight and sufficiency claims in its Rule 1925(a) opinion. *See* Trial Court Opinion, 8/13/15.

Unequivocally, by its plain text, Rule 1925(b) requires that statements "identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). The Rule also requires that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court...." *Id.* at 1925(b)(4)(v). Most significantly, any issues not raised in accordance with Rule 1925(b)(4) will be deemed waived. *Id.* at 1925(b)(4)(vii). Our Supreme Court has held that Rule 1925(b) is a bright-line rule, and "any issues not raised in a Rule 1925(b) statement will be deemed waived." *Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011); *accord* Pa.R.A.P. 1925(b)(4)(vii). Accordingly, Appellant's weight and sufficiency claims are waived.

In his second issue, Appellant argues that the trial court erred at sentencing by "failing to merge Aggravated Indecent Assault and Indecent Assault with IDSI and or failing to merge Aggravated Indecent Assault with Indecent Assault." Appellant's Brief at 24. The Commonwealth has responded, *inter alia* and apropos, that Appellant's convictions "did not stem from one criminal act, but more than fifty acts committed over a period of approximately six years." Commonwealth's Brief at 6.

In rejecting Appellant's merger claim, the trial court capably explained, and it bears repeating here, as follows.

> 42 Pa.C.S.A. § 9765 provides:
>
> > No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> Section 9765 prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other. **Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009).
>
> …
>
> In **Commonwealth v. Allen**, 856 A.2d 1251, 1253-54 (Pa. Super. 2004)[, *appeal denied*, 870 A.2d 319 (Pa. 2005)], the Superior Court held that Aggravated Indecent Assault and Indecent Assault are not greater and lesser-included offenses and do not merge. Accordingly, [Appellant's] argument that Aggravated Indecent Assault and Indecent Assault should have merged is meritless.
>
> In **Commonwealth v. Yeomans**, the Superior Court explained that "the preliminary consideration under Section 9765 is whether the two crimes at issue arose from a single act. This is because our courts have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply." 24 A.3d 1044, 1050 (Pa. Super. 2011) (citation omitted). The [Superior C]ourt explained that a defendant commits more than one criminal act if he commits multiple criminal acts beyond that which is necessary to establish the

- 7 -

bare elements of the additional crime. **Id.** (citation omitted). The rationale is to prevent defendants from receiving a "volume discount" on crime. **Id.**; **Commonwealth v. Ross**, 543 A.2d 1235, 1237 (Pa. Super. 1988) (finding appellant's conviction for Indecent Assault and IDSI did not merge where the defendant committed multiple acts during each encounter); **Commonwealth v. Whetstine**, 496 A.2d 777, 780-81 (Pa. Super. 1985) appellant's convictions for IDSI and Indecent Assault did not merge where appellant committed separate and distinct injurious acts).

Here, [Appellant] committed multiple distinct criminal acts. In the first instance of abuse, [Appellant] forced L.R. to touch and suck on his penis, committing IDSI. N.T., 2/17/2015, at 95-96. [Appellant] then continued the abuse by licking L.R.'s vagina and inserting his finger into her vagina, committing Aggravated Indecent Assault. **Id.** at 96-99. Finally, [Appellant] ejaculated next to L.R., committing Indecent Assault. **Id.** In this single incident of abuse, [Appellant] committed multiple distinct criminal acts that supported his convictions for IDSI, Aggravated Indecent Assault, and Indecent Assault. Additionally, [Appellant] sexually abused L.R. over fifty times over the course of the years that she lived with her grandmother, further supporting that [Appellant] committed distinct criminal acts. **Id.** at 100-103. Accordingly, the charges did not merge.

Trial Court Opinion, 8/13/15, at 9-11.

Given the record before us, we are in agreement with the Commonwealth and trial court regarding Appellant's merger claim. As Appellant's first issue is waived, and his second issue is without merit, we decline to grant Appellant relief, and affirm the May 26, 2015 judgment of sentence.

- 8 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/6/2016